GILBERT H. and JUANITA W. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 1349-75.
United States Tax Court
T.C. Memo 1976-95; 1976 Tax Ct. Memo LEXIS 307; 35 T.C.M. (CCH) 402; T.C.M. (RIA) 760095; March 25, 1976, Filed Gilbert H. Johnson, pro se. Daniel P. Ehrenreich, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $2,756.05 and $100.42 in petitioners' Federal income tax for 1971 and 1972, respectively. The only issue to be decided is whether petitioners *308 realized ordinary income or capital gains from the sale of certain items of machinery during the years in issue. The answer turns on whether the machines were assets held primarily for sale to customers in the ordinary course of business or capital assets held for investment within the meaning of section 1221. [1]/ FINDINGS OF FACT Petitioners Gilbert H. and Juanita W. Johnson, husband and wife, were legal residents of Fairfield, Connecticut, at the time their petition was filed. They filed joint Federal income tax returns for the years in issue. During the period March 10, 1967, through April 1, 1971, Gilbert H. Johnson (hereinafter petitioner) was employed as a sales representative by Austin D. Lucas & Company, Inc. (hereinafter the company). The company was engaged in the purchase, sale, and leasing of metal fabricating machinery and averaged $1 million annually in sales. Petitioner's compensation consisted of a salary and a year-end bonus paid in profitable years at the discretion of the company. Petitioner was neither a shareholder *309 nor an officer of the company during the period in issue. While serving as a sales representative for the company, petitioner was permitted in his individual capacity, along with other investors, to acquire an interest in certain metal fabricating machines. In 1966, petitioner personally acquired an interest in a rolling mill which he and the other owners leased for approximately 1 year. The mill was then sold at a profit, and petitioner's gain on the transaction was reported on his 1967 income tax return as capital gain. In 1967, while traveling in England on behalf of the company, petitioner learned that a Sendzimir mill could be purchased at a favorable price. Upon returning to this country, petitioner, three other individuals, and the company bought this mill and brought it to the United States. Unsuccessful efforts were made to lease the mill, and it was sold for a profit in 1971. Petitioner and three other participants acquired two other machines in 1969 and sold them in 1971 at a profit. The parties in these transactions had an oral agreement as to the terms of the purchases and resales, but did not enter into any written agreement or contract. The following is a list of *310 the machines, date of purchase, purchase price, date of sale, sales price, and petitioner's percentage interest: Purchase
Sale
Petitioner's Machine
Date
Price
Date
Price
Interest
10inch X 10inch
Treadwell
2-Hi Mill
6/ 4/69
$ 648.13
6/22/71
$ 1,640.62
25.0%
12inch X 16inch
2-Hi Mill
6/ 4/69
$ 500.00
2/22/71
$ 1,030.31
25.0%
#19-25inch
Sendzimir
Mill
3/10/67
$8,750.00
4/ 1/71
$16,168.81
12.5% Each machine was purchased with the intent to lease it or, ultimately, to realize a profit on its resale. In previous years, petitioner had deducted his pro rata share of the depreciation, $4,182.47, for one of these machines sold in 1971. Petitioner's share of the profits from the resale of the machinery, after adjusting for allowed depreciation, was $13,124.08, and petitioner reported this amount on his 1971 income tax return as long-term capital gain. On July 1, 1971, petitioner became an officer in the company. Because Austin Lucas (hereinafter Lucas), the company's president, wished to reduce the company's investment in the inventory of machines, an agreement was drawn up between Lucas, petitioner, and two other individuals, whereby *311 future purchases of machinery would be made jointly by the four individuals as partners, instead of being made by the company. All profits and expenses were to be shared equally among the four partners, and additional provisions were included concerning the administration of the partnership business. Pursuant to the partnership agreement, petitioner was involved in 100 transactions during 1972 through 1974 in which he realized a total profit of $80,154.37. Petitioner reported such gains as ordinary income on his income tax returns for those years. Respondent determined that the machines sold in 1971 were held primarily for sale in the ordinary course of petitioner's trade or business within the meaning of section 1221(1) and that the resulting gains were ordinary income. Alternatively, respondent determined that the depreciation claimed by petitioner in prior years is subject to recapture pursuant to section 1245, resulting in ordinary income to the extent of the depreciation previously allowed. OPINION The sole issue presented for decision is whether the metal fabricating machines in which petitioner owned percentage interests were held "primarily for sale to customers in the *312 ordinary course of his trade or business" within the meaning of section 1221(1), [2]/ with the result that the gain from the sale of the machinery is taxable as ordinary income rather than capital gain. This same issue has been presented on numerous occasions in varying factual scenarios. While the decided cases have listed various factors to be considered in reaching a conclusion as to whether or not a capital asset is involved, the ultimate decision must rest on the facts of the individual case. ; ; ; . *313 The congressional purpose behind the enactment of section 1221(1), stated in , was to distinguish between gains derived from everyday business operations and gains resulting from appreciation in value of assets over a substantial period of time. Under section 1221(1), the assets must not only be held for sale, but those sales must also be made in the ordinary course of the taxpayer's business. ; . In our view, the gains from petitioner's purchase and sales transactions involving the three disputed fabricating machines were derived from investments, not the operation of a business. While it is true that petitioner's employer was in the business of buying and selling metal fabricating machines, it is clear that petitioner's acquisitions and sales were undertaken in his individual capacity as an investor seeking a profit rather than the operator of a business. Petitioner's investments were made only after he obtained the permission of his supervisor, Lucas, who could have granted or refused petitioner the requisite *314 permission. We do not think the four isolated purchase transactions during the period 1966 to 1969, the one sale in 1967, and the three sales in 1971, constituted a business. Even though petitioner held the assets for sale, he did not sell the machines in the ordinary course of business as that term is used in section 1221(1). ; . Nor does the fact that petitioner subsequently became a member of a partnership engaged in the business of buying and selling fabricating machines lead to a conclusion that the three machines herein involved were sold in furtherance of petitioner's trade or business. Respondent has attempted to combine petitioner's sales before he entered into the partnership with those occurring after the partnership was formed, claiming that all the sales were part of an overall business of selling fabricating machines. However, the sales prior to the July 1, 1971, partnership agreement were made while petitioner was only an employee of the company, who owned no shares of stock in the company and was not an executive officer. At the time petitioner entered *315 into the partnership agreement in 1971, an overall plan by the company had been adopted wherein petitioner and his partners were to be actively involved in reducing the company's inventory of fabricating machines. By becoming involved in the partnership, petitioner ceased being merely an investor and entered into the active business of buying and selling fabricating machines. Since the three assets herein involved were disposed of prior to his entry into the partnership arrangement, we do not think that, at the times of the sales, the machines were held primarily for sale in the ordinary course of petitioner's business. We agree with respondent's alternative contention that a portion of petitioner's gains was ordinary income. In prior years, petitioner deducted depreciation in the aggregate amount of $4,182.47 on one of the assets in question. Because his proportionate gain from that asset exceeded the total depreciation allowed, petitioner, pursuant to section 1245(a)(1), [3]/ must include as ordinary income $4,182.47 of the gains reported in 1971. *316 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. / SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include-- (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;↩
3. / SEC. 1245. GAIN FROM DISPOSITIONS OF CERTAIN DEPRECIABLE PROPERTY. (a) General Rule.-- (1) Ordinary income.--Except as otherwise provided in this section, if section 1245 property is disposed of during a taxable year beginning after December 31, 1962, the amount by which the lower of-- (A) the recomputed basis of the property, or (B) (i) in the case of a sale, exchange, or involuntary conversion, the amount realized, or (ii) in the case of any other disposition, the fair market value of such property, exceeds the adjusted basis of such property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. Such gain shall be recognized notwithstanding any other provision of this subtitle.↩